# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A R INTERNATIONAL ANTI-FRAUD SYSTEMS, INC., | CASE NO. CV F 08-1301 LJO SMS |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO QUASH** (Doc. 29) |
| vs. | |
| PRETORIA NATIONAL CENTRAL BUREAU OF INTERPOL, et al. | |
| Defendants. | |

## INTRODUCTION

On May 5, 2009, defendant Pretoria National Central Bureau of Interpol ("Interpol Pretoria") moved to dismiss plaintiff A.R. International Anti-Fraud Systems, Inc.'s ("A.R. International's") first amended complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), and moved to quash service of process. Interpol Pretoria argues that it is immune from suit in the United States, pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1602 *et seq.*; it is not subject to personal jurisdiction in California; A.R. International's claims are barred by the statute of limitations; A.R. International fails to state a claim; and A.R. International failed to serve process properly. In opposition, A.R. International submits multiple exhibits, but fails to provide legal authority or analysis to support its positions. For the following reasons, this Court finds that it lacks subject matter jurisdiction over this matter and lacks personal jurisdiction over Interpol Pretoria. In addition, A.R. International's first cause of action is untimely. Accordingly, this Court dismisses this action without leave to amend.

## BACKGROUND

In the first amended complaint ("FAC"), A.R. International asserts two breach of contract claims against Interpol Pretoria. A.R. International is a corporation with its principal place of business located in Fresno, California. Interpol Pretoria "is a section of the South African Police Service, and part of the government of the Republic of Africa" that "became a member of Interpol in 1993." FAC ¶ ¶4, 7. A.R. International alleges that Interpol Pretoria entered into two contracts, by offering rewards for information leading to the capture of two international fugitive criminals, and breached those contracts by failing to pay the rewards. A.R. International's claims are based on the following allegations, derived from A.R. International's first amended complaint.

A.R. International's first claim relates to its assistance that led to the capture of Jerry Couvaras ("Mr. Couvaras"). On July 1, 1997, Interpol Pretoria sent a facsimile to A.R. International to request A.R. International's assistance to locate Mr. Couvaras. Mr. Couvaras was accused of securities fraud in South Africa that resulted in over $74 million in losses. After receiving the fax, A.R. International "contacted" Interpol Pretoria and "discussed the matter. At that time, defendant Interpol Pretoria agreed to pay to Plaintiff 10% of these damages if Plaintiff would provide information leading to the capture of Mr. Couvaras." FAC ¶10. Thereafter, A.R. International provided Interpol Pretoria with the address and location of Mr. Couvaras. That information led to Mr. Couvaras' arrest and conviction in 2004. Over the "next several months," Interpol Pretoria "reaffirmed its promise to pay Plaintiff the reward for the services it provided." On August 23, 2007, Interpol Pretoria "again repeated its promise to pay Plaintiff for these services." FAC ¶12. For breach of this contract, A.R. International seeks to recover $7,442,000.00, plus interest.

The second claim relates to a reward offered for information leading to the capture and conviction of Arnold Forbes ("Mr. Forbes"), a person accused of murder in South Africa. A.R. International alleges that Interpol Pretoria sent a July 23, 1997 fax that offered to pay $250,000[1] for information leading to the arrest and conviction of Mr. Forbes. FAC ¶17. A.R. International provided

---

[1] A.R. International uses the United States dollar symbol to allege an award offer of 250,000 USD in his complaint. Documents submitted in opposition to this motion, however, indicate the reward offered was 250,000 South African rand (ZAR) or R.250,000. At current exchange rates, R.250,000 is valued at approximately $30,578.02. http://currate.com/basic.php?amt=1&from=USD&to=ZAR (visited on July 14, 2009 at 9:18 a.m.)

2

Interpol Pretoria with information that led to the capture, arrest, and conviction of Mr. Forbes. Despite continued reaffirmations of its promise to pay A.R. International, including on August 23, 2007, Interpol Pretoria failed to pay the reward. FAC ¶¶18, 19. For this alleged breach of contract, A.R. International demands $250,000, plus interest.

A.R. International initiated this action on September 2, 2008 against Interpol Pretoria and nine other defendants. On February 2, 2009, Interpol Pretoria, and then-named defendants Nilton Mendes and Jaimes Taylor, moved to dismiss A.R. International's complaint, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). In addition, the defendants moved to quash the service of summons and to dismiss the action on grounds of forum non conveniens. Through an "amended motion," filed on February 12, 2009, A.R. International voluntarily dismissed nine of the ten defendants named in the original complaint, leaving Interpol Pretoria as the sole defendant. A.R. International filed a first amended complaint on February 18, 2009, pursuant to Fed. R. Civ. P. 15(a).

Interpol Pretoria moved to dismiss the first amended complaint on May 20, 2009. A.R. International opposed the motion on May 28, 2009, and submitted Exhibits A-F in support of its opposition. Interpol Pretoria replied on June 24, 2009. This Court vacated the July 1, 2009 hearing, pursuant to Local Rule 78-230(h), and issues the following order.

## DISCUSSION

### Subject Matter Jurisdiction

Interpol Pretoria moves to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). A.R. International bases subject matter jurisdiction on 28 U.S.C. §1330(a), which confers this Court with original jurisdiction in a civil action against a foreign state, provided the foreign state is not entitled to immunity. To determine whether a foreign state is immune from suit, this Court looks to FSIA, which "provides the sole basis for subject matter jurisdiction over foreign states and their agents or instrumentalities." *In re Republic of Philippines*, 309 F.3d 1143, 1149 (9th Cir. 2002). Pursuant to 28 U.S.C. §1330(a), "federal courts have jurisdiction over foreign states as defendants under the FSIA only when the state is not entitled to immunity–that is, when one of the statutory exceptions applies." *Moore v. United Kingdom*, 384 F.3d 1079, 1083 (9th Cir. 2004). The Court presumes sovereign immunity to exist under FSIA, and foreign states enjoy "not only immunity from liability, but

immunity from suit." *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 205 (9th Cir. 1997); *Randolph v. Budget Rent-A-Car*, 97 F.3d 319 (9th Cir. 1996). As a court of limited jurisdiction, and because a foreign state is presumed to have sovereign immunity from suit under FSIA, this Court must determine first whether it has subject matter jurisdiction over this matter. *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 (9th Cir. 1992).

FSIA codifies, as a matter of federal law, a restrictive theory of the doctrine of sovereign immunity.[2] Pursuant to FSIA, a foreign state is immune from the jurisdiction of United States courts unless one of the statutory exceptions applies. 28 U.S.C. §§1604, 1605-1607; *Export Group v. Reef Indus.*, 54 F.3d 1466 (9th Cir. 1995). Exceptions to sovereign immunity include waiver, commercial activities, and tortious injury caused in the United States. 28 U.S.C. §§1605, 1607. When one of the exceptions applies, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. §1606.

The Court employs a burden-shifting examination to determine whether Interpol Pretoria is entitled to sovereign immunity, and if so, whether one of the FSIA exceptions applies. Initially, Interpol Pretoria has the burden to present a prima facie case of sovereign status. *Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1470 (9th Cir. 1995). Once sovereign status is established, the burden shifts to A.R. International to demonstrate that one of the statutory exceptions to immunity applies. *In re Republic of Philippines*, 309 F.3d 1143, 1149 (9th Cir. 2002). If A.R. International "offers evidence that an exception to immunity applies," the burden of persuasion reverts back to Interpol Pretoria to prove " by a preponderance of the evidence that the exception does not apply." *Randoph*, 97 F.3d at 324 (citing *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 707-08 (9th Cir.1992), *cert. denied*, 507 U.S. 1017 (1993)).

---

[2] For over 140 years, the United States granted absolute immunity to friendly foreign sovereign states, based on the notion of comity. *See*, *The Schooner Exchange v. M'Faddon*, 7 Cranch 116, 136 (1812) (Marshall, C.J.) (the United States impliedly waived jurisdiction over certain activities of foreign sovereigns because the jurisdiction of a nation within its own territory "is susceptible of no limitation not imposed by itself."). In 1952, the United States narrowed this generous grant of immunity and adopted a restrictive theory of sovereign immunity. The restrictive theory was proscribed in the "Tate Letter," in which the State Department announced a shift in policy by the executive branch–namely, that sovereign immunity would be confined to a foreign sovereign's public acts, but would not apply to a foreign sovereign's commercial or "private" acts. Letter from Acting Legal Adviser of the Department of State to the Department of Justice, Jack B. Tate (May 19, 1952), reprinted in *Alfred Dunhill of London, Inc. v. Cuba*, 425 U.S. 682, 711-15 (1976) (White, J.). This policy change was later codified by Congress in 1976 as FSIA. 28 U.S.C. §1602; *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983).

Interpol Pretoria submits that it is a "foreign state" within the meaning of FSIA and is entitled to sovereign immunity. FSIA defines "foreign state" to include a "political subdivision" and an "agency or instrumentality" of a foreign state. 28 U.S.C. §1603(a). An "agency or instrumentality" is as defined as an entity:

> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States...nor created under the laws of any third country.

28 U.S.C. §1603(b). A.R. International does not challenge Interpol Pretoria's position that it is a "foreign state" within the meaning of FSIA. Interpol Pretoria points out that the allegations of the complaint demonstrate that A.R. International falls within the definition of 28 U.S.C. §1603. A.R. International alleges that Interpol Pretoria "is a section of the South African Police Service, and part of the government of the Republic of South Africa." FAC ¶4. A.R. International describes that the "International Criminal Police Organization ('Interpol') is the world's largest international police organization, with over 180 independent member states, facilitates cross-border police cooperation, and supports and assists organizations and authorities whose mission is to prevent or combat crime." FAC ¶7. A.R. International alleges that Interpol Pretoria "became a member of Interpol in 1993." *Id*. Based on A.R. International's allegations to characterize Interpol Pretoria, and Interpol Pretoria's unchallenged position of sovereign status, Interpol Pretoria presents a prima facie case that it enjoys a statutory presumption of immunity from suit. *Randolph*, 97 F.3d 319, 324.

With the presumption of sovereign immunity established, the burden shifts to A.R. International to prove that one of the statutory exceptions to sovereign immunity applies. *In re Republic of Philippines*, 309 F.3d 1143, 1149 (9th Cir. 2002). In the first amended complaint, A.R. International alleges vaguely that Interpol Pretoria "is not immune from suit either under 28 U.S.C. sections 1605 through 1607 or under any applicable international agreement." FAC ¶1. In opposition to this motion, A.R. International specifically contends that Interpol Pretoria waived its sovereign immunity. The waiver exception is codified in 28 U.S.C. § 1605, entitled "General exceptions to the jurisdictional immunity of a foreign state," which provides:

5

>(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case–
>
>>(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

Accordingly, pursuant to 28 U.S.C. § 1605(a)(1), Interpol Pretoria is not immune from suit if it "has waived its immunity either explicitly or by implication...."

FSIA's waiver exception is to be "narrowly construed." *Hilao v. Estate of Carcos (In re Estate of Marcos Human Rights Litig.)*, 94 F.3d 539, 546 (9th Cir. 1996) (quotations omitted). This Court has "some discretion" to determine whether a waiver of FSIA immunity has occurred in a particular case. *Drexel Burnham Lambert Group v. Committee of Receivers for Galadari*, 12 F.3d 317 (2nd Cir. 1993), *cert. denied,* 511 U.S. 1069 (1994). Only the defendant, or his sovereign, and not juridically separate government instrumentalities can waive a defendant's FSIA immunity. *Chuidian v. Phillippine Nat'l Bank,* 912 F.2d 1095 (9th Cir. 1990).

A.R. International relies on two documents to support its contention that Interpol Pretoria waived its sovereign immunity. The first document is a letter that appears to be from the "Office of the State Attorney Pretoria." Pl. Ex. B ("State Attorney Letter"). The State Attorney Letter is addressed to "Adams & Adams Attorneys" in Pretoria and bears the following subject line: "**AR International Anti Fraud Systems/Interpol Pretoria**." The State Attorney Letter is signed by B.E. Mthimunye "For: State Attorney (Pretoria)." The State Attorney Letter reads:

>I refer to your letter of 29th January 2009.
>
>I have appointed a correspondent in California and the issues of the jurisdiction are being dealt with there. I do not want a parallel litigation here in South Africa. I therefore request that you convey this message to your instructing correspondents in the United States.
>
>Accordingly, I will not be signing the form.

The second document is a form entitled "Stipulation to Elect Referral of Action to Voluntary Dispute Resolution Program (VDRP) Pursuant to Local Rule 16-271." Pl. Ex. C ("VDRP Form"). The VDRP Form is dated December 15, 2009. On the VDRP Form, the name E.D. Groenwald is printed immediately underneath the typewritten caption that identifies Interpol Pretoria as the defendant. To the

1 right of the printed name, there is a signature for E.D. Groenwald. The words "State Attorney Pretoria"
2 are printed on the signature line for the defendant's attorney. The body of the VDRP Form reads:
3 "Pursuant to Local Rule 16-271, the parties hereby agree to submit the above-entitled action to the
4 Voluntary Dispute Resolution Program."

5 Because neither document constitutes an explicit waiver of sovereign immunity, this Court
6 considers whether Interpol Pretoria waived its immunity by implication. Generally, implicit waivers are
7 found only where the foreign state has agreed to arbitration in another country, has agreed that the law
8 of a particular country should govern the contract, or has filed a responsive pleading without raising the
9 defense of sovereign immunity. *Gates v Victor Fine Foods,* 54 F3d 1457 (9th Cir.), *cert. denied*, 516 US
10 869 (1995); *see also, In re Estate of Marcos Human Rights Litig.,* 94 F.3d at 546 (same) (citing
11 H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6617).
12 Although these three examples do not constitute "an exclusive list of the circumstances giving rise to
13 implied waiver," there must be a direct connection between the sovereign's activities in United States
14 courts and plaintiff's claims for relief to support a finding of an implied waiver of FSIA immunity. *In
15 re Estate of Marcos Human Rights Litig.*, 94 F.3d at 546; *see also*, *Corzo v. Banco Cent. De Reserva
16 Del Peru*, 243 F.3d 519, 523 (9th Cir. 2001). For example, the "failure to assert immunity after
17 consciously deciding to participate in the litigation may constitute an implied waiver of immunity."
18 *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000).

19 Having considered the documents presented and the applicable law, this Court finds that A.R.
20 International fails to establish that an FSIA exception applies to allow subject matter jurisdiction.
21 Neither the State Attorney Letter nor the VDRP Form constitutes a waiver of its sovereign immunity,
22 even if the Court accepts the documents as true and authentic. *See Saudi Arabia v. Nelson*, 507 U.S. 349,
23 351, 361 (1993) (disputed allegations forming basis for suit, even if true, not "commercial activity"
24 within meaning of exception); *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (Court accepts as
25 true jurisdictional allegations in facial attack).[3] The author of the State Attorney Letter acknowledges

---

27 [3]Although this Court accepts the documents as true, this Court notes that neither document is authenticated, A.R.
28 International fails to establish that the signatories to the documents have authority to waive sovereign immunity for Interpol
Pretoria, and fails to establish a connection between Interpol Pretoria and the State Attorney Pretoria. *See*, *Chuidian v.*

this California litigation and expresses, "I do not want a parallel litigation here in South Africa." A.R. International, however, makes no attempt to explain how an expression of its desire to avoid parallel litigation in South Africa constitutes evidence of a waiver of Interpol Pretoria's sovereign immunity. Moreover, the author explains that "issues of the jurisdiction are being dealt with" in California. This statement cannot be construed to waive a sovereign's immunity from suit, as it indicates that jurisdictional issues remain unresolved. As to the VDRP Form, an agreement to participate in this Court's voluntary dispute resolution program does not equate to an agreement to arbitration. This Court's VDRP offers litigants an Early Neutral Evaluation to reduce the "economic burdens and delay in the resolution of disputes that can be imposed by full, formal litigation." Local Rule 16-271. In Early Neutral Evaluation, the court-appointed Neutral examines the parties' pleadings early and evaluates each party's case. The Neutral's confidential evaluation is not a judgment of the court, is made without prejudice and is non-binding. *See generally, In re Prohibition Against Disclosing ENE Communs. to Settlement Judges*, 494 F. Supp. 2d 1097 (N.D. Cal. 2007) (explaining in detail the process and function of ENE). By contrast, arbitration is a more formal method of dispute resolution typically heard after some discovery, and is binding on the parties. Because the implicit waiver clause is narrowly construed, "courts rarely find that a nation has waived its sovereign immunity without strong evidence that this is what the foreign state intended." *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993); *accord, Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 277 (7th Cir. 1985). The VDRP Form provides no evidence that the Interpol Pretoria has agreed to arbitration in this forum. In addition, A.R. International fails to persuade this Court that it should expand the narrow scope of FSIA's implicit waiver exception to include VDRP. For these reasons, this Court is not satisfied that either the State Attorney Letter or VDRP Form constitutes a knowing waiver of immunity by Interpol Pretoria. Accordingly, this Court lacks subject matter jurisdiction pursuant to FSIA and 28 U.S.C. §1330, and dismisses this action pursuant to Fed. R. Civ. P. 12(b)(1).

---

*Phillippine Nat'l Bank,* 912 F.2d 1095 (9th Cir. 1990) (Only the defendant, or his sovereign, and not juridically separate government instrumentalities can waive defendant's FSIA immunity.).

**Personal Jurisdiction**[4]

Similarly, this Court lacks personal jurisdiction over Interpol Pretoria, and dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(2). Personal jurisdiction over a foreign state depends on subject matter jurisdiction over the action against the foreign state under FSIA. 28 U.S.C. § 1330(b). "[P]ersonal jurisdiction, like subject-matter jurisdiction, exists only when one of the exceptions to foreign sovereign immunity in [FSIA] applies." *In re Estate of Marcos Human Rights Litig.*, 94 F.3d at 545-46 (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 435 n. 3(1989)).[5] For the reasons described above, Interpol Pretoria is immune from suit in this court, and A.R. International fails to establish a statutory exception to FSIA. Accordingly, personal jurisdiction is lacking, and this Court dismisses Interpol Pretoria from this action pursuant to Fed. R. Civ. P. 12(b)(2).

**Statute of Limitations**

Interpol Pretoria asserts that A.R. International's claims are barred by the statute of limitations, and moves to dismiss with prejudice the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint in question, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). To survive a motion to dismiss,

---

[4] Although this Court finds that it lacks subject matter jurisdiction in this matter, the Court considers all arguments advanced in Interpol Pretoria's motion to dismiss, in an abundance of caution. This Court will not address Interpol Pretoria's motion to quash summons of service.

[5] *See also, Gilson v Republic of Ireland,* 606 F. Supp. 2d 38 (D. D.C. 1984), *affd.*, 787 F2d 655(D.C. Cir. 1986) (In determining existence of personal jurisdiction in FSIA, court must first determine whether personal jurisdiction exists over defendant under Act, and then it must consider whether exercise of such jurisdiction over defendant under Act is permissible under due process clause of Fifth Amendment.); *United States Meadows v. Dominican Republic*, 817 F. 2d 517, 523 (9th Cir.), *cert. denied*, 484 U.S. 976 (1987) (considering minimum contacts within relevant geographic area). Because this Court finds subject matter and personal jurisdiction lacking, the Court need not consider whether personal jurisdiction is proper under the due process clause of the Fifth Amendment or the applicable minimum contacts test.

the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). This Court is limited to assessing the legal sufficiency of allegations contained within four corners of complaint. *Jojola v Chavez*, 55 F.3d 488 (10th Cir. 1995); *see also*, *Balisteri*, 901 F.2d at 699. However, this Court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch*, 546 F.3d at 588 (citing *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007)). "If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity...is not contested and the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (internal quotations and citations omitted).

A.R. International claims that Interpol Pretoria breached two "oral contracts" to pay a reward for information leading to the capture and arrest of two international fugitives. Both parties appear to agree that the alleged contracts are governed by California law and further agree that the statute of limitations for an oral contract is two years. Cal. Civ. P. Code §339. Regarding the offer of a reward for the capture of a person, the well-settled rule in California, as the California Supreme Court pronounced 150 years ago, is described in *Ryer v. Stockwell*, 14 Cal. 134 (1859):

> The offer of a reward for the detection of an offender...is an offer or proposal on the part of the person making it...and such offer on one side, and acceptance and performance on the other, is a valid contract, made on good consideration, which the law will enforce. This was therefore...a contract...upon the acceptance of the terms of it by plaintiff and his performance of the services.

Where the reward is offered after capture and conviction of the fugitive, "[t]here is no doubt, that the statute did not begin to run until the conviction of the felon." *Ryer*, 14 Cal. 134.

As to the first cause of action, Interpol Pretoria breached the alleged oral contract in 2004, when it failed to pay the promised reward after Mr. Couvaras was captured and convicted. According to the complaint, Interpol Pretoria agreed orally to pay A.R. International a reward for information leading to the capture of Mr. Couvaras. Thereafter, A.R. International provided Interpol Pretoria with the address and location of Mr. Couvaras. In 2004, Mr. Couvaras was arrested and convicted based on information

provided by A.R. International. FAC ¶ 11. Accordingly, the statute of limitations began to run in 2004. Because the statute of limitations for oral contracts is two years, A.R. International's first cause of action–filed on September 2, 2008–is untimely.

A.R. International appears to argue that the statute of limitations did not begin to run, or was tolled, until either: (1) an August 24, 2007 final demand letter was sent to Interpol Pretoria by A.R. International's attorney; or (2) a September 25, 2006 oral promise to pay the rewards by a person affiliated with Interpol Pretoria. While identifying the appropriate questions, A.R. International fails to cite legal authority or provide analysis to support its position that the statute of limitations began to run at the time a final demand letter was sent, or when Interpol Pretoria allegedly reaffirmed its prior oral promise.[6] In addition, A.R. International impermissibly relies on facts and documents outside of the complaint to support this Fed. R. Civ. P. 12(b)(6) motion without addressing whether, and how, this Court is able to consider said facts and documents. For these reasons, A.R. International's opposition is insufficient to defeat Interpol Pretoria's Fed. R. Civ. P. 12(b)(6) motion, because it fails to establish that the claim was filed in a timely manner.

As to the second cause of action, A.R. International alleges that on July 23, 1997, Interpol Pretoria sent an offer via fax to pay $250,000 for information leading to the arrest and conviction of Mr. Forbes. FAC ¶ 16. A.R. International performed its part under the agreement by providing evidence that led to the arrest and conviction of Mr. Forbes. FAC ¶ 17. After Mr. Forbes was arrested and convicted, and despite multiple requests, Interpol Pretoria refused to pay A.R. International the reward. FAC ¶ 19. The first amended complaint does not specify when Mr. Forbes was arrested or convicted, but does allege that on August 23, 2007, Interpol Pretoria "again repeated its promise to pay" A.R. International the $250,000 reward.

To discuss whether the second cause of action is timely, both parties rely impermissibly on documents outside of the complaint. Interpol Pretoria argues that according to an August 23, 2007

---

[6] In its opposition to the instant motion, A.R. International writes: "The following reasonable questions might be raised: when the statute of limitations starts?; when the statute of limitations can be tolled?; whether or not promises to pay and negotiations can be considered a denial or breach so the statute of limitations will start?" Although it raises these various questions, A.R. International fails to answer them, and provides no legal analysis or authority to support its conclusion that the statute of limitations began on either August 24, 2007 or September 25, 2006.

11

1  demand letter sent by A.R. International to Interpol Pretoria, Mr. Forbes was captured in November or
2  December 2002. The letter relied upon by Interpol Pretoria was attached to the original complaint.
3  Generally, this Court may rely on documents attached to the complaint, *Lee*, 250 F.3d at 688; however,
4  the operative pleading is the first amended complaint. An amended complaint supercedes the original
5  complaint, and this Court treats A.R. International's original complaint as withdrawn. *Ferdik v. Bonzelet*,
6  963 F.2d 1258, 1262 (9th Cir. 1992). Accordingly, this Court cannot consider the document relied upon
7  by Interpol Pretoria.[7] Without explanation, A.R. International provides the August 23, 2007 demand
8  letter as Exhibit E to its opposition. In addition, A.R. International submits a "sworn statement" by Alex
9  Peros ("Mr. Peros"), the principal of A.R. International as Exhibit F, alleging that Captain Nilton
10 Mendes agreed to pay the rewards.[8] A.R. International also submits a "Chronological Order of
11 Facsimiles Received From Interpol-Pretoria," prepared by A.R. International, as Exhibit D. Because
12 these documents were not attached to the first amended complaint, this Court may consider them only
13 "if the documents' authenticity...is not contested and the plaintiff's complaint necessarily relies on
14 them." *Lee*, 250 F.3d at 688. Neither party addresses whether A.R. International's first amended
15 complaint "necessarily relies" on the documents attached as exhibits to its opposition to the instant
16 motion. This Court refuses sua sponte to convert this motion to dismiss to a Fed. R. Civ. P. 56 motion
17 for summary judgment by considering documents outside of the complaint. Accordingly, this Court
18 limits its analysis to the allegations contained in the complaint.

19 The first amended complaint is silent as to when Mr. Forbes was arrested and convicted. On a
20 motion to dismiss, this Court construes the pleading in a light most favorable to the non-movant, and
21 resolves all doubts in the pleader's favor. Construing the pleading in a light most favorable to A.R.
22 International, this Court cannot determine, as a matter of law, that A.R. International's second claim is
23 untimely. Accordingly, Interpol Pretoria's motion to dismiss the second claim is denied.

---

[7] In addition, Interpol Pretoria relies on a document attached to the original complaint to assert that the Forbes reward was offered by a family member of the victim, not Interpol Pretoria. Interpol Pretoria's motion to dismiss the second cause of action fails, as this Court cannot consider this document in this Fed. R. Civ. P. 12(b)(6) motion where the original complaint was superceded by the first amended complaint.

[8] According to Mr. Peros' sworn statement, Captain Mendes told Mr. Peros, on January 8, 2007: "You are definitely eligible to receive the rewards for both cases because you did the work...I will prepare a testimonial and sign it and post it for you."

**Leave to Amend**

When granting a motion to dismiss, a court generally grants a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). Considering that A.R. International has amended its complaint once to address the issues herein discussed, Interpol Pretoria enjoys immunity from suit, this Court lack subject matter jurisdiction over this action, lacks personal jurisdiction over Interpol Pretoria, and at least one of A.R. International's claims are barred by the statute of limitations, this Court finds that further amendment would be futile. Accordingly, this Court does not grant A.R. International leave to amend the complaint.

### Conclusion

For the foregoing reasons, this Court:

1. GRANTS Interpol Pretoria's Fed. R. Civ. P. 12(b)(1) and 12(b)(2) motions;
2. GRANTS in part and DENIES in part Interpol Pretoria's Fed. R. Civ. P. 12(b)(6) motion;
3. DISMISSES with prejudice the first cause of action;
4. DISMISSES this action in its entirety without leave to amend; and
5. DIRECTS the clerk of this court to close this action.

IT IS SO ORDERED.

Dated:   July 15, 2009          /s/ Lawrence J. O'Neill
                                UNITED STATES DISTRICT JUDGE